920 F.2d 334
 Lillian H. HALL, William L. Hall, Wallace G. Gibson, Brenda
C. Gibson, d/b/a Jackson, Tennessee Motel Partnership; R.
Vance Burkey and M.D. Kelly, Individually and as partners of
Jackson, Tennessee Motel Partnership, Plaintiffs-Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION and Security Trust
Federal Savings and Loan Association, Defendants-Appellees.
 No. 89-6350.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 14, 1990.
Decided Nov. 28, 1990.
Rehearing and Rehearing En Banc
Denied Jan. 16, 1991.
 
 Gary R. Patrick, Patrick, Beard & Richardson, Richard P. Jahn, Jr., Jahn & Jahn, Chattanooga, Tenn., William S. Lockett, Jr. (argued), Kennerly, Montgomery & Finley, Knoxville, Tenn., for plaintiffs-appellants.
 J. Michael Winchester, E. Brian Sellers, Gordon D. Foster, Lacy & Winchester, Elizabeth S. Tonkin, Walt, Dyer & James, Knoxville, Tenn., Sharon Sivertsen (argued), Federal Deposit Ins. Corp., Washington, D.C., Thomas R. Dyer, Memphis, Tenn., for defendants-appellees.
 Before: JONES and BOGGS, Circuit Judges; and GIBBONS,* District Judge.
 BOGGS, Circuit Judge.
 
 
 1
 This case presents the question whether the Federal Savings and Loan Insurance Corporation (FSLIC) may invoke the doctrine of D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), as a complete bar to this suit for breach of a loan agreement by a failed savings and loan association. In light of D'Oench 's prohibition against the introduction of any evidence of side agreements not incorporated into the loan agreement, we affirm the order of the district court.
 
 
 2
 * In April 1987, the plaintiffs sued Commerce Federal Savings and Loan Association, Inc. (Commerce) in Tennessee state court for breach of a loan agreement, claiming that Commerce failed to fund fully a $1.85 million loan.[1] On August 26, 1988, four days before trial was scheduled to begin, FSLIC was appointed by the Federal Home Loan Bank Board as receiver for Commerce.[2] Substantially all of Commerce's assets and liabilities were then acquired from FSLIC by Security Trust Federal Savings and Loan Association (Security Trust). However, an assignment agreement between FSLIC and Security Trust, executed contemporaneously with the acquisition agreement, expressly removes from the liabilities assumed any liability resulting from this lawsuit. FSLIC then removed the case to federal court.
 
 
 3
 The district court permitted the plaintiffs to add Security Trust as a party. Security Trust filed a motion to dismiss, and FSLIC filed a motion for summary judgment, both of which the district court granted.
 
 
 4
 B & K Enterprises, Inc. (B & K), a corporation owned by plaintiffs Burkey and Kelly, had constructed a motel of modular units in Knoxville to accommodate the anticipated high demand for hotel rooms during the 1982 World's Fair. Burkey and Kelly had obtained a $1 million loan from United American Bank of Knoxville (UAB) in order to build the motel. The UAB loan was secured by the modular units, and UAB was given a first priority lien on the units. Weak advance bookings at the motel forced B & K to default on the loan in 1982.
 
 
 5
 In order to salvage their investment in the Knoxville motel, Burkey and Kelly advertised the modular units for sale. The Halls and the Gibsons responded to an advertisement in the Wall Street Journal, and together the six plaintiffs decided to obtain a loan sufficiently large to allow them to pay off the UAB debt and to relocate the units in Jackson.
 
 
 6
 On January 20, 1983, the Halls, the Gibsons, Burkey and Kelly established the Jackson, Tennessee Motel Partnership for the purpose of constructing a motel off Interstate 40 in Jackson. On January 25, 1983, the Halls and the Gibsons entered a term loan agreement with Commerce in order to finance the project. Burkey and Kelly were not parties to the loan agreement, but they were guarantors on the promissory note between Commerce and the Halls and Gibsons. The loan agreement provided that Commerce would lend the plaintiffs $1.85 million to be used in defraying costs associated with relocating 96 modular units from Knoxville to Jackson. According to FSLIC, the units were to constitute security for the loan.[3]
 
 
 7
 The plaintiffs claim that they believed UAB would be participating in the loan with Commerce. On November 18, 1982, Commerce wrote to UAB to confirm that UAB had committed to purchase a participation in Commerce's loan to the plaintiffs in the amount of $1.1 million. Jack Patrick, a vice president of UAB, countersigned the confirmation letter. However, a participation agreement between UAB and Commerce had not been completed by the time the plaintiffs closed the loan with Commerce. The term loan agreement between Commerce and the plaintiffs provided that Commerce would not be obligated to fund more than $750,000 if UAB did not participate in the loan.[4]
 
 
 8
 At the January 25, 1983 closing, the plaintiffs executed in Commerce's favor a deed of trust on the land in Jackson on which the motel was to be built. They also signed a security agreement, granting Commerce an interest in all personal property. Paragraph 1 of the security agreement parroted the language of the collateral requirement in the loan agreement. On the day of the closing, the plaintiffs requested that Commerce fund part of the loan; the bank agreed to disburse a first draw on the loan in the amount of $200,000.
 
 
 9
 In February 1983, Paul E. Bostic, a vice president at Commerce, notified the plaintiffs that Commerce would not further fund the loan due to their failure to honor their agreement to give Commerce a first priority lien on the modular units. On April 11, 1983, the plaintiffs issued a formal draw request for $300,000 that included evidence that about two-thirds of the motel's construction had been completed. Commerce refused to fund this request or any others. The plaintiffs were forced to stop construction on their motel. Unpaid subcontractors sued the plaintiffs and obtained liens on the motel property.
 
 
 10
 UAB and Commerce never entered a formal agreement for UAB to participate in the $1.85 million loan. Despite this fact, Jack Patrick of UAB indicated in an affidavit submitted in response to the motion for summary judgment that "it was understood between Commerce and UAB that Commerce would have a security interest in the modular units once they were moved to Jackson, Tennessee." On February 14, 1983, less than one month after the closing involving Commerce and the plaintiffs, the commissioner of banking for the state of Tennessee closed UAB; FDIC was appointed receiver. As of this date, UAB had apparently not released in writing its lien on the modular units. UAB's security interest in the units was on record as late as September 30, 1985. On that date, FDIC, as receiver of UAB, subordinated its security interest in the units (which it obtained through UAB) in favor of Jackson National Bank.
 
 
 11
 In October 1985, the plaintiffs secured a $1.5 million loan from Jackson National Bank. They used the proceeds to complete construction of the motel and to satisfy judgments and other debts arising out of the project, including the balance ($282,988.64) of the total principal and interest owed to Commerce. On August 26, 1988, Commerce was placed in receivership.
 
 II
 
 12
 The first issue in this appeal is whether Security Trust should be reinstated as a party defendant. The district court granted Security Trust's motion to dismiss it as a party because the assignment agreement between Security Trust and FSLIC required FSLIC to assume all liability for the plaintiffs' claims against Commerce.[5] The court deemed FSLIC to be the real party in interest and held that Security Trust's dismissal was required regardless of the outcome of the plaintiffs' suit against FSLIC.
 
 
 13
 The plaintiffs contest this decision on the ground that Security Trust volunteered to assume liability for the plaintiffs' claims against Commerce. The plaintiffs claim that since they never agreed to release Security Trust from the liability it voluntarily assumed, Security Trust cannot assign away its liability to the plaintiffs. Under common contract principles, the plaintiffs argue that Security Trust may not assign its liabilities without the plaintiffs' permission. While FSLIC may undertake to share in the liability assumed by Security Trust, Security Trust allegedly remains jointly and severally liable for any judgment award owed to the plaintiffs.
 
 
 14
 We reject the plaintiffs' argument because FSLIC acted within its statutory discretion in entering into an acquisition transaction in which it assumed liabilities arising out of this lawsuit. See 12 U.S.C. Sec. 1729(f)(2)(A). We find no support in the record for the assertion that Security Trust voluntarily assumed any potential liability from this case. The assignment agreement indicates that Security Trust affirmatively insured that it would not be saddled with any such liabilities.
 
 
 15
 Furthermore, the acquisition agreement, executed contemporaneously with the assignment agreement, stated that Security Trust would succeed to substantially all of Commerce's assets and liabilities, thus permitting exceptions. Both the language of Sec. 1729(f) and the terms of the assignment agreement and of the acquisition agreement contemplate the kind of assumption of liabilities undertaken by FSLIC. Under these circumstances, the district court properly dismissed Security Trust as a party defendant.[6]III
 
 
 16
 * The second issue is whether the district court erred by granting summary judgment to FSLIC on the ground that D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), bars this action. The court held that the D'Oench doctrine, largely codified in 1950 at 12 U.S.C. Sec. 1823(e),[7] supplied FSLIC with a complete defense to the breach of contract claim. D'Oench stands for the proposition that, in order to protect FDIC from "misrepresentations as to the ... assets in the portfolios of banks which [FDIC] insures," secret agreements that tend to deceive banking authorities cannot be raised as a defense against FDIC when it seeks to enforce a note. Id. at 457-58, 62 S.Ct. at 679-80. The fact that there is no actual deception or injury is irrelevant. Id. at 459, 62 S.Ct. at 680. The district court held that D'Oench precluded the plaintiffs from presenting proof of any representations made by Commerce beyond the terms of the loan agreement. Thus, the plaintiffs were not permitted to use an alleged side agreement to refute the affirmative defense that they failed to give Commerce a priority security interest in the collateral, as required by the loan agreement.
 
 
 17
 The plaintiffs claimed in the district court that Commerce waived the condition in the loan agreement requiring them to give Commerce priority in the collateral. They asserted that Commerce's conduct at the closing, when it funded $200,000 of the loan, was a representation to them that they had satisfactorily complied with the terms of the agreement. The court found that even if Commerce made such a waiver, the waiver is not reflected in its records. Furthermore, nothing in the record indicates that FSLIC was aware of Commerce's alleged waiver. The court held, therefore, that neither waiver nor estoppel, due to Commerce's conduct, could be attributed to FSLIC. The D'Oench doctrine was deemed applicable, despite the fact that FSLIC invoked it in its role as defendant rather than as plaintiff, because the unwritten waiver would have the effect of deceiving banking authorities. The authorities would have assumed from the terms of the loan agreement either that Commerce had no obligation to fund the loan because the plaintiffs had failed to supply all of the collateral or that it had a priority security interest in the collateral when in fact UAB retained priority. The district court also rejected any argument that UAB released its lien by means of its commitment to participate in the Commerce loan. It found that D'Oench prohibited reliance on this sort of side agreement, given that it was not incorporated into the loan agreement. The plaintiffs therefore could not dispute that Commerce rightfully refused to fund the full loan, since they failed to meet a condition precedent to the loan agreement and D'Oench barred any extrinsic proof to the contrary.
 
 
 18
 The plaintiffs' appeal assumes that the D'Oench doctrine has been completely codified at 12 U.S.C. Sec. 1823(e). Section 1823(e) provides that no agreement that tends to diminish the FDIC's interest in an asset acquired from an insolvent bank is valid unless the agreement is in writing, was executed by the bank and the obligor, was approved by the bank's board of directors, and has been made a part of the bank's official records. In this case, the plaintiffs argue that Commerce did not own any "asset" when FSLIC assumed Commerce's assets and liabilities, because they paid off the loan in 1985, long before Commerce fell into receivership. Since the plaintiffs owed Commerce nothing by August 1988, they argue that FSLIC had no interest in any Commerce asset, and that D'Oench, like Sec. 1823(e), is therefore inapplicable to their breach of contract claim. See Commerce Federal Savings Bank v. Federal Deposit Insurance Corporation, 872 F.2d 1240, 1245 (6th Cir.1989).
 
 
 19
 The plaintiffs contend that the facts of this case distinguish it from those in which courts have protected FDIC from unwritten or secret agreements that diminish FDIC's rights in assets acquired from a failed bank. This is not a case where the obligor seeks to avoid payment on a note that came into FDIC's portfolio through an acquisition agreement. They argue that the D'Oench doctrine only applies when a claim is being made by FDIC (or FSLIC), not by the obligor.
 
 B
 
 20
 We first address the plaintiffs' contention that the scope of the D'Oench doctrine is limited by the language of Sec. 1823(e).[8] The plaintiffs maintain that the language of Sec. 1823(e) restricts the application of the D'Oench doctrine to cases where FDIC (or FSLIC) has an interest in an asset of an insolvent bank; they then maintain that FSLIC never gained an interest in a Commerce asset, and that D'Oench is therefore inapplicable.
 
 
 21
 We do not believe that the common law doctrine of D'Oench is limited by the terms of Sec. 1823(e). It is settled that D'Oench and Sec. 1823(e) are not identical in scope. We have already recognized that the D'Oench doctrine has broader application than Sec. 1823. See Taylor Trust v. Security Trust Federal Savings and Loan Association, Inc., 844 F.2d 337, 342 (6th Cir.1988) (applying the D'Oench doctrine to protect FSLIC, though Sec. 1823(e) only protects FDIC). See also Federal Deposit Insurance Corporation v. McClanahan, 795 F.2d 512, 514 n. 1 (5th Cir.1986) ("It has not been suggested that the enactment of Sec. 1823(e) in 1950, as an amendment to the Federal Deposit Insurance Act, preempted the common law rule of D'Oench, Duhme"). At least one court has held that the D'Oench doctrine applies to protect FDIC in its capacity as receiver, although Sec. 1823(e) offers no such protection. Beighley v. Federal Deposit Insurance Corporation, 868 F.2d 776, 783 (5th Cir.1989). In most of the cases applying the D'Oench doctrine, FDIC did have, as required by Sec. 1823(e), an interest in an asset of an insolvent bank, but typically because FDIC was suing to collect on a note in which FDIC had acquired an interest.
 
 
 22
 There are, however, instances where FDIC no longer has an interest in an asset, but where the logic of D'Oench should still apply to protect FDIC. For example, an obligor and a bank in receivership might have mutual breach of contract claims growing out of loan documents in the bank's records. The obligor, anticipating a suit by FDIC, might quickly pay off the note in an attempt to block FDIC's resort to the D'Oench doctrine. Under these circumstances, the fact that the obligor paid off the debt so as that FDIC did not have "an interest in an asset" should not prohibit FDIC from invoking D'Oench.
 
 
 23
 Another example is where FDIC holds an interest in a "negative asset." FDIC may possess documents that appear to have no value as an asset; a subsequent lawsuit by the obligor would convert the documents from having no value to having a negative value. The effect of an imposition on public funds is the same in the case where a lawsuit creates a negative asset as where it reduces the value of a positive asset. The D'Oench doctrine should protect FDIC in both cases. D'Oench is important for allowing banking authorities to determine exactly what a bank's assets and liabilities are. The doctrine may therefore be invoked even where FDIC does not have "an interest in an asset."
 
 
 24
 However, we find that D'Oench applies in any event, because FSLIC did have an interest in a Commerce asset. The plaintiffs paid off their $200,000 obligation before Commerce fell into receivership, but the $200,000 represented only a partial funding of the $1.85 million embodied in the loan agreement. Commerce, like the plaintiffs, possessed a continuing interest in the entire loan agreement after the $200,000 was repaid. Clearly the obligations represented by the loan agreement were not extinguished upon repayment of the $200,000; otherwise, the plaintiffs would have no colorable breach of contract claim. When FSLIC succeeded Commerce in its rights and duties under the loan agreement, FSLIC assumed an interest in whatever obligations remained under the loan agreement. FSLIC does not, therefore, lack standing to assert a D'Oench defense.
 
 C
 
 25
 We now consider whether FSLIC may invoke the D'Oench doctrine to defeat a borrower's defense to FSLIC's defense to a suit in contract rather than, as in D'Oench itself, simply to defeat a borrower's defense to an obligation on a note. In D'Oench, the Supreme Court prohibited the maker of a note from asserting an affirmative defense based on an unwritten agreement with the failed bank. FSLIC maintains, however, that the D'Oench doctrine applies in actions brought against the FSLIC as well as in actions brought by the FSLIC against a borrower. We agree.
 
 
 26
 In Beighley v. Federal Deposit Insurance Company, 676 F.Supp. 130 (N.D.Tex.1987), reconsideration denied, 679 F.Supp. 625 (1988), aff'd, 868 F.2d 776 (5th Cir.1989), the district court considered the applicability of Sec. 1823(e) to claims against FDIC. The court held that:
 
 
 27
 [t]o allow a claim against the FDIC asserting the very grounds that could not be used as a defense to a claim by the FDIC is to let technicalities stand in the way of principle. Moreover, the effect of such an approach would be to reduce actions Congress has allowed the FDIC to pursue to nullities since defendants could counterclaim and recover what they lost.
 
 
 28
 676 F.Supp. at 132 (emphasis in original). In affirming the district court, the Fifth Circuit held that the claim against FDIC was barred by the common law doctrine expressed in D'Oench, not by Sec. 1823(e). 868 F.2d at 783-84.
 
 
 29
 We are persuaded by this reasoning. If, as the Beighley court observed, D'Oench did not apply to bar the introduction of evidence of a side agreement in a claim against FDIC (or FSLIC), then an obligor could circumvent the sound policy behind D'Oench by asserting as a counterclaim that which could not be asserted as an affirmative defense. See Federal Deposit Insurance Corporation v. Lattimore Land Corporation, 656 F.2d 139, 146 n. 13 (5th Cir. Unit B 1981). In this case, the plaintiffs rely on the November 18, 1982 letter agreement between UAB and Commerce to argue that UAB released its lien on the 96 modular units as a matter of law. The plaintiffs failed, however, to incorporate this release into the loan agreement. The plaintiffs also failed to incorporate into the loan agreement, as the district court found, any evidence of the participation agreement, as the deal between UAB and Commerce was never concluded. Because "it would tend to deceive the banking authorities," the side agreement that the plaintiffs rely on is precisely the type of secret agreement barred by the Supreme Court in D'Oench. Langley v. Federal Deposit Insurance Corporation, 484 U.S. 86, 92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987).
 
 
 30
 Since the D'Oench doctrine is not limited to cases in which the claim is pressed by FSLIC rather than the obligor, it operates to preclude the plaintiffs' breach of contract action. Examiners for FSLIC could easily have overestimated the value of the loan agreement on the books because of the alleged unevidenced waiver of the collateral requirement. The land on which the new motel sits was apparently worth only $175,000. The modular units constituted the bulk of the collateral's value. Without a priority interest in those units, the loan agreement had much less (and possibly negative) value. The D'Oench doctrine is intended to avoid exactly this sort of potential confusion.
 
 
 31
 Where a failed bank or thrift has breached a written term of a loan agreement, the obligor may, of course, sue FDIC as receiver without the bar of the D'Oench doctrine. But where, as here, the breach asserted depends on a side agreement that conflicts with the terms of the written loan agreement, a breach of contract claim cannot be sustained. Since under no version of these facts are the plaintiffs entitled to judgment as a matter of law, summary judgment for FSLIC was properly granted.[9] Fed.R.Civ.P. 56(c).
 
 
 32
 For the foregoing reasons, the order of the district court is AFFIRMED.
 
 
 33
 NATHANIEL R. JONES, Circuit Judge, dissenting.
 
 
 34
 I agree with the majority that application of the D'Oench doctrine is not necessarily limited to cases brought by the FSLIC, and that the district court correctly granted Security's motion to dismiss. I dissent, however, because of my belief that the majority's opinion unnecessarily expands the protection afforded the FDIC under the D'Oench doctrine. In my view, that doctrine was only intended to apply to situations where the FDIC acquires an asset from a failed institution. As the plaintiffs had already paid back all the money they had borrowed, the FDIC did not acquire an "asset" for the purposes of D'Oench.
 
 
 35
 The majority broadens the scope of D'Oench to situations where the FDIC does not retain an interest in an asset. Its limits, however, should be recognized; otherwise, the burden on borrowers could become onerous and the powers of regulators more expansive. See generally Sontag, To Thrift Fraud Victims, Government Says 'Tough Luck', 13 Nat'l L.J. 3 (Sept. 24, 1990) (describing D'Oench as a "once-little-used doctrine ... applied to nearly every major S & L failure as myriad borrowers try to get out from under their debts.").
 
 
 36
 I do not favor applying "the logic of D'Oench" to situations where the FDIC does not acquire an asset simply in order to protect the FDIC from liability. That an asset be acquired is a requirement frequently spelled out. The D'Oench decision itself spoke of "a federal policy to protect [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insures[.]" 315 U.S. at 457, 62 S.Ct. at 679 (emphasis added). The Supreme Court's most recent case dealing with 12 U.S.C. Sec. 1823(e), which is the statutory version of D'Oench, stated that the policy behind section 1823(e) is "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." Langley v. Federal Deposit Ins. Corp., 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987) (emphasis added). See also Vernon v. Resolution Trust Corp., 907 F.2d 1101, 1107 (11th Cir.1990) ("[T]he D'Oench doctrine has been used to protect entities that have acquired assets of failed banks from the FSLIC.") (emphasis added).
 
 
 37
 While the majority concedes that section 1823(e) contains an asset requirement, it yet argues that D'Oench can protect the FDIC even when it has no interest in an asset. Whatever the differences in scope between section 1823(e) and D'Oench, however, I remain unconvinced that D'Oench can bar a claim when the FDIC does not retain an interest in an asset of a failed institution. In any event, the majority argues that the FSLIC did have an interest in an asset; the asset being "a continuing interest in the entire loan agreement after the $200,000 was repaid."
 
 
 38
 I would find that no asset was acquired because plaintiffs had paid back all of the money they borrowed from Commerce. Commerce Federal Savings Bank v. FDIC, 872 F.2d 1240, 1245 (6th Cir.1989) (in case involving section 1823(e) codification of D'Oench, "deed of trust was not an acquired asset of the FDIC, because [appellant] ... had satisfied all outstanding indebtedness."). Our decision in Commerce Federal was followed by the First Circuit in another section 1823(e) case. The First Circuit stated that:
 
 
 39
 even if there were a secret agreement between [the bank and its borrower], however, section 1823(e) would not entitle FDIC to recover on the note, because the note was discharged by the payment and cancellation of the underlying debt before FDIC ever obtained it. Since the note was invalidated by acts that were independent of the alleged secret agreement, the note was not an asset[.]
 
 
 40
 FDIC v. Bracero & Rivera, Inc., 895 F.2d 824, 830 (1st Cir.1990).
 
 
 41
 I would not apply D'Oench to bar plaintiffs' claim in this case. Instead, the merits of plaintiffs' claims under the terms of the loan agreement should be addressed. I respectfully dissent.
 
 
 
 *
 The Honorable Julia Smith Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 The plaintiffs are Lillian H. Hall and William L. Hall, and Wallace G. Gibson and Brenda C. Gibson, d/b/a Jackson, Tennessee Motel Partnership, and R. Vance Burkey and M.D. Kelly, individually and as partners of Jackson, Tennessee Motel Partnership
 
 
 [2]
 The defendant in this case is now the Federal Deposit Insurance Corporation (FDIC), Manager of the FSLIC Resolution Fund, which was substituted for FSLIC by the court's order on December 4, 1989. The substitution was a result of Congress's decision to abolish FSLIC in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). As FSLIC was the original party involved in this case, we will refer to the defendant as FSLIC
 
 
 [3]
 The loan agreement stated that the loan would be secured by a prior security interest in "all furniture, furnishings, fixtures, trade fixtures, tools, machinery, equipment and inventory (meaning all merchandise, raw materials, work in progress, finished goods and other tangible property), and all accounts receivable, contract rights, general intangibles and other chattel paper now owned or hereafter acquired by Debtor, and used in connection with or relating to the 100-unit motel project in Jackson, Tennessee...." On appeal, the plaintiffs do not dispute that the modular units constituted part of this collateral
 
 
 [4]
 This clause in the agreement appears to have been motivated in part by the fact that Commerce's legal lending limit in January 1983 was $1,114,349
 
 
 [5]
 Paragraph 1 of the assignment agreement provides that "the FSLIC hereby assumes any obligations or liabilities of [Security Trust] arising out of ... the case of [Hall, et al.] v. Commerce Federal Savings Bank as Successor in interest to Commerce Savings and Loan Association, Inc., Defendants, Circuit Court for Knox County, Tennessee, No. 2-270-87."
 
 
 [6]
 Given our disposition of this issue, we need not address whether Security Trust, as successor in interest to FSLIC, is protected by the doctrine of D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)
 
 
 [7]
 Although Sec. 1823(e) applies by its terms to FDIC only, we have held that the D'Oench doctrine applies to FSLIC and FDIC. See Taylor Trust v. Security Trust Federal Savings and Loan Association, Inc., 844 F.2d 337, 342 (6th Cir.1988)
 
 
 [8]
 Although the case law interpreting Sec. 1823(e) may inform our decision, Sec. 1823(e) is not directly implicated here, since Sec. 1823(e) does not apply to FSLIC, the real party in interest
 
 
 [9]
 The plaintiffs contended at oral argument that they had a valid breach of contract claim even if their proof was limited to the four corners of the loan agreement. However, the success of that claim depends on UAB's release of its lien, as allegedly evidenced by the November 18, 1982 confirmation letter. As noted above, as late as September 30, 1985, there were indications that a release was never effected. As of that date, UAB had a priority security interest in the modular units, which FDIC as receiver then subordinated in favor of Jackson National Bank. Therefore, as we hold that the confirmation letter is merely a side agreement to the loan agreement, the plaintiffs' claim cannot survive a motion for summary judgment