Jack ABRAMS, Plaintiff–Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant–Appellee.

No. 90–5975.

United States Court of Appeals, Sixth Circuit.

Argued March 14, 1991.

Decided Sept. 19, 1991.

W. Jeffrey Scott (argued and briefed), Grayson, Ky., for plaintiff-appellant.

Elizabeth Johnson (argued), Federal Deposit Ins. Corp., Legal Dept., Knoxville, Tenn., John I. Hanbury (briefed), Van Antwerp, Monge, Jones & Edwards, Ashland, Ky., for defendant-appellee.

Before KRUPANSKY and BOGGS, Circuit Judges, and WOODS, District Judge.*

BOGGS, Circuit Judge.

In August 1989, Jack Abrams filed suit for conversion in the Kentucky courts against the Federal Deposit Insurance Corporation ("FDIC") in its corporate capacity. After the suit was removed to federal court, the district court granted summary judgment for the FDIC and Abrams appealed. For the reasons that follow, we affirm the district court's judgment in part and reverse in part.

## I

This suit arose from the failure of the Peoples Bank of Olive Hill in December 1987. The FDIC was appointed receiver for the failed bank, and subsequently sold some of the Bank's assets to the FDIC acting in its corporate capacity. Included in the assets sold to FDIC-corporate were a loan from the Bank to Abrams and a contract settling a prior deficiency on that loan. Despite the settlement contract, FDIC-corporate alleged that Abrams still owed money on the loan. FDIC-corporate then seized Abrams's remaining account at the Bank, worth approximately $6,000, and applied the $6,000 as a setoff against the money allegedly owed on the loan.

The loan was first contracted in 1976 as a mortgage on Abrams's house for $59,-332.96 with a 9½% interest rate. By 1980, it was clear that Abrams was in default. Accordingly, the Bank filed suit for foreclosure. In December 1980, Abrams and the Bank settled the suit by signing a contract. The contract reads in pertinent part:

1. [Abrams] agrees to execute to [Peoples Bank] a deed of conveyance for the property set out in the mortgage securing the heretofore mentioned note. . . .

3. [sic] [Peoples Bank] agrees to attempt

---

* The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

to sell said property for a fair market price. 3. [Abrams] agrees to be responsible for and agrees to pay the deficiency, if any, remaining from the proceeds after the proceeds from the sale of said property is applied to the indebtedness as heretofore set out. 4. [Peoples Bank] agrees to forego executing suit for foreclosure upon said note and mortgage upon execution of this contract.

The contract was signed and the suit dismissed. Abrams also deeded his house over to the Bank. The deed contained a stated consideration of $71,592.63.

The Bank subsequently sold the house to Carmel Stevens, but is unclear what the Bank received for the house. The deed to Stevens includes a stated consideration of $72,000. It is undisputed that Stevens paid for Abrams's house with a combination of money and another house that the Bank could later resell. The records provided to us on appeal do not clearly establish what the Bank actually received from Stevens, nor how much the Bank ultimately received on the house received in trade.

Abrams argued in his motion opposing summary judgment that he owed no money on the loan, thereby making the setoff an illegal conversion. He contended that the president of the Bank, Barry Knipp, told him in 1981 after the transaction with Stevens that the contract was "at an end," and that he was no longer liable for any deficiency. No writing memorializing this agreement has been found, but it is undisputed that the Bank made no effort to collect any money from Abrams after the Stevens transaction. Abrams also contended that this agreement was merged in the deed, and that the FDIC had failed to establish conclusively the existence and amount of any deficiency on the original loan.

The FDIC responded to Abrams's contentions. First, the FDIC argued that Abrams could not rely on Knipp's oral representation because of 12 U.S.C. § 1823(e) and *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Second, the FDIC argued that the doctrine of merger

by deed did not relieve Abrams of any responsibility for any deficiency because the doctrine *precludes* reliance on any prior agreements not contained in the deed itself. It does not incorporate unstated agreements related to the deed. Third, the FDIC produced an affidavit from one of its employees averring that Abrams was indebted to the Bank for $19,822.63 in connection with the loan and the Stevens transaction. The affidavit contained no Bank records to substantiate the claim.

Abrams also made a discovery request for "all resolutions of the board of directors of the Peoples Bank of Olive Hill, minutes of all board meetings of the Peoples Bank of Olive Hill, and resolutions and all notes of the loan committee of the Peoples Bank of Olive Hill from October 1980 through December 1987." The FDIC did not comply fully with this request, citing Privacy Act concerns pertaining to other persons who did business with the Bank whose names and affairs would appear in these records. Instead, the FDIC gave Abrams all of those minutes from the requested time period of the board of directors and the loan committee that mentioned Abrams or the foregoing affairs in any way.

The district court accepted all of the FDIC's arguments, ruling that the FDIC had complied with the discovery request and granting it summary judgment. Abrams appealed from the summary judgment order and the denial of his discovery request.

## II

### A

We affirm those portions of the district court's judgment denying Abrams the ability to contest his liability under the loan based on his alleged agreement with Knipp. We also affirm the district court's ruling that the FDIC had complied with Abrams's discovery request. We reverse the district court's determination that the FDIC had conclusively proved that Abrams owed money on the loan and that such amount was in excess of the amount Abrams had

remaining in his bank account, holding instead that a material issue of fact remains on this issue.

B

■ Knipp's alleged promise in 1981 not to collect any deficiency remaining under Abrams's loan and contract cannot prevent the FDIC from relying on the literal words of the loan and contract to collect that deficiency. It is well settled that an oral "side agreement" to an asset, tending to diminish the FDIC's interest in that asset, cannot defeat or diminish an otherwise valid obligation contained in the Bank's records. *D'Oench, Duhme*, 315 U.S. at 458–60, 62 S.Ct. at 679–81; 12 U.S.C. § 1823(e).[1] Such "side agreements" are not permitted to alter the written terms of the document creating the obligation because such agreements, not appearing in the bank's records, would have a tendency to deceive the bank examiners as to the true value of the bank's assets even if an intent to deceive the examiners was not present. *Langley v. Federal Deposit Insurance Corporation*, 484 U.S. 86, 91–92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987); *D'Oench, Duhme*, 315 U.S. at 459, 62 S.Ct. at 680; *Hall v. Federal Deposit Insurance Corporation*, 920 F.2d 334, 340 (6th Cir. 1990), *cert. denied*, ⎯ U.S. ⎯, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991); *First State Bank v. City and County Bank*, 872 F.2d 707, 715 (6th Cir.1989). We have held that the FDIC may assert the *D'Oench, Duhme* doctrine in actions brought against it as well as in actions brought by the FDIC. *Hall*, 920 F.2d at 340.

The Abrams–Knipp agreement, presuming that it was made, is precisely the sort of agreement against which *D'Oench, Duhme* and § 1823(e) are aimed.[2] *See Langley*, 484 U.S. at 93, 108 S.Ct. at 402; *First State Bank*, 872 F.2d at 717 ("[W]e hold that the *D'Oench* estoppel doctrine precludes the enforcement of any oral agreement that is in contradiction with representations made to the FDIC"). It purports to annul an obligation that would otherwise appear to be valid based on the information in the bank's records. It would tend to deceive bank examiners because the examiners would assume that Abrams still owed the money on the loan and contract. It meets none of the requirements imposed by § 1823(e) that would permit it to be asserted against the FDIC: it is not in writing; it was not entered into contemporaneously with the acquisition of the asset by the bank; it was not approved by any official committee of the bank; and, it was not contained in the bank's records. As it is undisputed that the FDIC has an interest in the collection of the loan, having purchased it in its corporate capacity, both *D'Oench, Duhme* and § 1823(e) deny Abrams any recourse to the Knipp agreement.

C

Abrams contends that the doctrine of merger by deed independently prevents him from being liable for any remaining deficiency. He contends that the doctrine mandates that any oral agreements made in connection with the making of a deed are

1. 12 U.S.C. § 1823(e) reads as follows:
   No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
   (1) is in writing,
   (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
   (3) was approved by the board of directors of the depository institution or its loan com-

   mittee, which approval shall be reflected in the minutes of said board or committee, and
   (4) has been, continuously, from the time of its execution, an official record of the depository institution.

2. In fact, the agreement at issue in *D'Oench, Duhme* was also one to refrain from calling for payment upon a note. The inability of a party to rely on an oral agreement suspending or cancelling payment on an otherwise valid note was so well established by 1987 that the Langleys conceded that section 1823(e) prevented them from relying on such agreements. *See Langley*, 484 U.S. at 89 n. 1, 108 S.Ct. at 400 n. 1.

automatically included in the deed. Therefore, he argues that Knipp's oral agreement that Abrams would not be responsible for any deficiency is contained in the deed and is binding on the FDIC.

■ This contention is for many reasons utterly meritless. The primary reason this argument is meritless is because it misstates the doctrine of merger by deed. The doctrine does not give effect to any oral agreement made in connection with the making of a deed not written therein; it *nullifies* any oral agreement not included in the deed, even if made in connection with the making of the deed. *Ferguson v. Cussins,* 713 S.W.2d 5 (Ky.App.1986); *Borden v. Litchford,* 619 S.W.2d 715 (Ky.App. 1981). *See Humphries v. Haydon,* 297 Ky. 219, 179 S.W.2d 895 (App.1944) (collecting cases). Therefore, the doctrine would bar consideration of Knipp's promise because the promise was not formally included in the deed even if it were applicable to this case.

### D

■ We also affirm the district court's ruling that the FDIC complied with Abrams's discovery request. We review district court rulings on discovery motions under an abuse of discretion standard. *Theunissen v. Matthews,* 935 F.2d 1454, 1465 (6th Cir.1991); *Scales v. J.C. Bradford and Co.,* 925 F.2d 901, 907 (6th Cir. 1991); *City of Mt. Clemens v. U.S.E.P.A.,* 917 F.2d 908, 914 (6th Cir.1990). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Monnette v. AM–7–7 Baking Co., Ltd.,* 929 F.2d 276, 280 (6th Cir.1991).

■ Our review of the evidence does not leave us with a firm conviction that the district court abused its discretion. The request was extremely broad, and was essentially a fishing expedition to permit the plaintiff to examine every piece of paper in the Bank's possession to find evidence that the loan committee had discussed matters pertaining to the loan and contract. The FDIC had reason to guard the privacy of other Bank clients whose affairs would be-

come known to plaintiff and his counsel if the discovery request were enforced literally. The FDIC has produced what it says is every document mentioning Abrams, the loan, or the Stevens transaction, and Abrams has provided no evidence to suggest even remotely that there might be some evidence the FDIC has not turned over. In light of this, the district court's ruling was not definitely in error.

### III

■ We reverse the court's grant of summary judgment, however, because we hold that a genuine issue of material fact exists regarding the existence and the amount of any deficiency owed by Abrams to the Bank.

The FDIC may avoid a judgment for Abrams for conversion only if it had the legal right to seize his savings account. The only source presented to this court for such a right is 12 U.S.C. § 1822(d), which permits the FDIC to withhold payment on that part of an insured bank account that can provide payment for any liability the accountholder has at the same bank. Thus, to be granted summary judgment, the FDIC must show that there is no genuine issue of material fact that (a) Abrams had an outstanding liability at the Peoples Bank at the time his account was seized, and (b) that the amount of that liability equalled or exceeded the amount seized from his account.

The FDIC has offered only one piece of evidence regarding the existence and amount of the deficiency: an affidavit of one of its employees responsible for the matters involved in this case, Michael Hall. Hall's affidavit simply states, in pertinent part:

3. That at the time of said Bank failure, the Bank's records showed that Plaintiff Jack H. Abrams was justly indebted to the Bank pursuant to a promissory note dated October 18, 1976 (a true copy of which is labeled Exhibit A and annexed to FDIC's Motion for Summary Judgment) and a contract dated December 10, 1980 (a true copy of which is labeled

Exhibit B and annexed to FDIC's Motion for Summary Judgment filed Herewith) *in the amount of $19,822.63.*

This single conclusory phrase, unsupported by any attached Bank records and without any explanation of how the amount owed was derived, is the only evidence ever offered by the FDIC to establish the existence and amount of the alleged deficiency.

Skimpy as it is, this affidavit is based upon personal knowledge of the affiant and is sufficient under Rule 56, Fed.R.Civ.P., to meet the moving party's burden to show there is no genuine issue of material fact regarding the existence and the amount of the deficiency. If Hall's affidavit were unrefuted, and if Abrams offered no other evidence pertaining to the existence or the amount of the deficiency, there would be no evidence sufficient to permit a rational jury to find that the FDIC did not have a legal right to seize Abrams's account, and therefore was liable for conversion. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *See also Federal Deposit Insurance Corporation v. Armstrong,* 784 F.2d 741, 745 (6th Cir.1986) (unrefuted FDIC employee affidavits sufficient to support grant of summary judgment for FDIC); *Federal Deposit Insurance Corp. v. Investors Associates X., Ltd.,* 775 F.2d 152, 156 (6th Cir.1985) (same).

■ Abrams offered two pieces of evidence in response to Hall's affidavit. First, Abrams submitted his own affidavit pointing out that both deeds involved in this case—the one executed by Abrams in 1980 in favor of the Bank, and that executed in 1981 by the Bank in favor of Stevens—included a stated consideration. The deed he executed in favor of the Bank had a stated consideration of $71,592.63, and the deed the Bank executed in favor of Stevens showed a stated consideration of $72,000. In light of the fact that the original loan was for just over $59,000, it can be said that a jury could rationally conclude that the exchange and/or the resale of the house satisfied the obligation. Second, Abrams noted in his motion to vacate summary judgment that the affidavit was un-

supported by bank records, and that the stated consideration in the first deed could be found to be precisely the amount owed by Abrams when he signed the deed and the contract.

While the stated consideration in the first deed cannot by itself establish a genuine issue regarding the existence or amount of the deficiency, with the addition of the stated consideration in the second deed, that issue is established. The first deed's consideration cannot establish that fact because of the terms of the contract. The contract clearly stated that Abrams agreed to be liable for any deficiency "remaining after the proceeds from the sale of said property is applied to the indebtedness." The stated consideration in the first deed clearly cannot have eliminated the debt because the contract signed along with the deed envisions that only the *proceeds from resale* of the property are to be applied against the debt, not the pre-resale *estimated value* of the property itself. As a rational jury could not find for Abrams based on the theory that the first deed's stated consideration conclusively eliminated Abrams's obligation to pay, that fact cannot create a genuine issue of *material* fact sufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The second deed's stated consideration, however, could be found to have created that issue. There is nothing in the record before us that disputes that this amount was received by the Bank. The Bank records before us in the record do not clarify matters at all. They show the following entries regarding the Stevens transaction:

1) A statement from a meeting of the board of directors on November 12, 1981 that Stevens was to purchase Abrams's house for $32,000 plus another house, which was appraised at $40,000;

2) A statement entitled "Other Real Estate as of December 31, 1982" showing an entry for a home "Jack Abrams" in "Amount" $41,192.63 and a "Sales Price" of $44,000.00;

3) A statement, apparently from December 1982 or January 1983, referring to Abrams's home acquired in December 1980. This statement gave an appraised value for the house of $40,000 as of June 29, 1981, a "Gross Amount" of $42,323.63, a "curtailment" of $1,130.00 as of June 28, 1982, a "Current Book Amount" of $41,192.63, and a "Sales Price" of $35,000;

4) A similar statement, apparently from July 1983, showing the same "Gross Amount," a new "Curtailment" of $7,073 as of July 19, 1983, a new "Current Book Amount" of $30,000.37, and the same "Sales Price";

5) A statement of unknown date entitled "Assets Subject to Adverse Classification" showing an entry for "Other Real Estate: Abrams." Under the heading "Substandard" is the amount $30,000, and under the heading "Less" is the amount $7,073.

We have been unable to determine from the provided records how the FDIC arrived at its figure of a deficiency of $19,822.63. In the absence of Bank records clearly substantiating the FDIC's calculation, a jury could rationally conclude that the entire proceeds of the Stevens exchange—including the estimated value of the Stevens house—was applied against the indebtedness. It could conclude from the similarity of amounts in the two stated considerations that Abrams owed approximately $72,000 when he signed the contract and deeded his house over to the Bank, and that the Bank received approximately $72,000 in total from Stevens in the resale of Abrams's house. Therefore, Abrams has provided sufficient evidence to permit a rational jury to find that the FDIC's defense to his claim of conversion is not valid, and that the FDIC is therefore liable for the amount seized. Based on that evidence, there remains a genuine issue of material fact for resolution at trial.

## IV

The district court's ruling that the FDIC complied with Abrams's discovery order is AFFIRMED. The district court's order is affirmed in so far as it prevents Abrams from asserting his oral side agreement with Knipp to prevent the seizure of his account, and in so far as it holds that the Abrams receives no protection from the doctrine of merger by deed. However, as a grant of summary judgment cannot stand in the face of evidence that would be sufficient to permit a rational jury to find for the non-moving party, the district court's judgment is REVERSED, and this case REMANDED to the district court for further proceedings not inconsistent with this opinion.