United States Court of Appeals,

Fifth Circuit.

No. 93-3193.

Duane DENDINGER, et al., Plaintiffs-Appellants,

Saeed Ahmed, Plaintiff-Appellant,

v.

FIRST NATIONAL CORPORATION, et al., Defendants,

Federal Deposit Insurance Corporation, as receiver for First National Bank, Defendant-Appellee.

March 16, 1994.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before HIGGINBOTHAM and DUHÉ, Circuit Judges and STAGG,[1] District Judge.

DUHÉ, Circuit Judge:

This appeal presents two disputes involving the now insolvent First National Bank of Covington, Louisiana ("FNB"). The first dispute involves a number of plaintiffs, suing together, seeking rescission and money damages under federal and state law for notes they signed in favor of FNB to purchase securities. The second dispute involves Appellant, Saeed Ahmed, who seeks damages for an alleged wrongful offset of a certificate of deposit ("CD"). The district court granted summary judgment against all Appellants. We affirm.

## BACKGROUND

Appellant, Duane Dendinger, and other named plaintiffs,

---

[1]District Judge of the Western District of Louisiana, sitting by designation.

executed promissory notes payable to the order of FNB, or payable to the order of another institution later consolidated with FNB, for the purpose of purchasing shares of stock. Following their suit against FNB, the Comptroller of the Currency declared FNB insolvent and appointed the FDIC as receiver for FNB. The FDIC took possession and control of the assets, property, and affairs of FNB, including the promissory notes. The FDIC was substituted as the party in interest to defend all claims asserted against FNB. The FDIC also filed counterclaims against many of the plaintiffs to recover the amounts due on their notes. Appellants admitted in their complaint and answer that they executed the notes, but have not asserted that any written agreements were entered into that modified the obligations on the notes. Appellants allege, however, that their obligations on the notes are not enforceable due to alleged material misrepresentations by FNB that prompted their execution of the notes and purchase of the stock. The district court granted summary judgment for the FDIC dismissing all affirmative claims by Appellants against the FDIC and granted summary judgment on the FDIC's counterclaims, awarding judgments to the FDIC on the note obligations. Appellants appeal the summary judgment granted on the FDIC's counterclaims.

The second dispute involves Saeed Ahmed's claims against FNB. In 1984 Ahmed bought a $100,000 CD from the First Progressive Bank of Metairie, Louisiana, which he deposited with the Louisiana Commission of Insurance in 1985 to qualify as a self-insured health care provider under the Louisiana Medical Malpractice Act. Later

2

in 1985, Ahmed bought securities for $110,000, financed by a note executed in favor of First National Bank of Riverlands, a subsidiary of FNB.  First Progressive, the issuer of the CD, then became a subsidiary of FNB as well.  After Ahmed had defaulted on his loans, FNB off set the CD against the balance due.  Ahmed sued seeking damages for an alleged wrongful offset.  Ahmed appeals the district court's grant of summary judgment for the FDIC.

DISCUSSION

I. *Standard of Review*

We review a summary judgment de novo.  *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 618 (5th Cir.1993).  Summary judgment may be granted if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

II. *Claims on the Promissory Notes*

The FDIC does not dispute the factual allegations made by Appellants regarding the circumstances surrounding the execution of the promissory notes.  Rather, the FDIC argues that despite any alleged illegality attendant to the execution of the notes, Appellants do not have a defense to FDIC recovery under the doctrine set forth in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and that doctrine's codification in 12 U.S.C. § 1823(e).[2]  The *D'Oench, Duhme* doctrine, and its

---

[2]At one time, § 1823(e) did not apply to the FDIC in its receiver capacity.  *Beighley v. FDIC,* 868 F.2d 776, 783 (5th Cir.1989).  In 1989, the statute was amended to include the FDIC as receiver.  Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), Pub.L. No. 101-73, 103 Stat. 183.

statutory counterpart, bar borrowers from defending against collection efforts of the FDIC by arguing that they had an unrecorded agreement with the failed bank. *D'Oench, Duhme,* 315 U.S. at 459-60, 62 S.Ct. at 680; § 1823(e).

Appellants respond that the *D'Oench Duhme* doctrine has no application in this case. Appellants arrive at this conclusion as follows. They contend that the execution of the notes violated § 10(b) of the Securities Exchange Act and, thus, the notes are voidable at the discretion of the innocent victim under § 29(b) of the Act, 15 U.S.C. § 78cc(b).[3] *See Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 386-88, 90 S.Ct. 616, 622-23, 24 L.Ed.2d 593 (1970) (holding that under § 29(b) a contract is voidable at the option of the innocent party). Appellants argue that they elected to hold the contracts void when they filed suit against FNB prior to the receivership. They contend that the FDIC has no right or interest that could be defeated or diminished by an unwritten

FIRREA took effect after the events in question and before the judgment by the district court. Nonetheless, we need not consider whether the statute applies retroactively because we have long held that both the statutory and common law doctrines bar similar defenses by borrowers. *See Resolution Trust Corp. v. Camp,* 965 F.2d 25, 31 (5th Cir.1992); *Kilpatrick v. Riddle,* 907 F.2d 1523, 1526 n. 4 (5th Cir.1990), *cert. denied,* 498 U.S. 1083, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991).

[3]This section provides in pertinent part:

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security or an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void....

agreement because the FDIC does not take title to a note if it is void. *See Langley v. FDIC,* 484 U.S. 86, 93-94, 108 S.Ct. 396, 402-03, 98 L.Ed.2d 340 (1987).

Although Appellants state correct propositions of law, they have mistaken the nature of their obligations on the notes. The Supreme Court in *Langley* did conclude that the FDIC does not take title to void obligations, but it explained that a transaction is void only if a plaintiff successfully asserts a fraud in the factum defense; "that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Id.* at 93, 108 S.Ct. at 402. In contrast, Appellants assert that FNB fraudulently induced them to execute the promissory notes, a defense that makes the notes merely voidable. *Id.* at 94, 108 S.Ct. at 402-403. Thus, title of the notes properly passed to the FDIC.

Because Appellants' obligations on the notes are voidable rather than void, the principles we announced in *Kilpatrick v. Riddle,* 907 F.2d 1523 (5th Cir.1990), *cert. denied,* 498 U.S. 1083, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991), control this case. In *Kilpatrick,* the plaintiffs claimed that swindlers coaxed them into signing notes in connection with the financing of new branches of a bank. The plaintiffs sued several defendants for violating federal securities law. While the suit was pending, the bank failed, and the notes were assigned to a bridge bank by the FDIC. The FDIC-created bridge bank in turn sued plaintiffs on their notes. We concluded that an oral misrepresentation by a lender to

a borrower, whether in violation of federal securities law or not, constitutes an unwritten "agreement" that does not bind the FDIC under the *D'Oench, Duhme* doctrine. *Id.* at 1527 (citing *Langley,* 484 U.S. at 92-93, 108 S.Ct. at 402). Second, we concluded that a " "voidable interest is transferable whether or not FDIC knows of the misrepresentation or fraud which produces the voidability.' " *Id.* at 1528 (quoting *FDIC v. Kratz,* 898 F.2d 669, 671 (8th Cir.1990)). Accordingly, we held that the *D'Oench, Duhme* doctrine precluded the plaintiffs from asserting their federal securities law claims and defenses.

Appellants next argue that as innocent borrowers from the bank, with no intent to deceive the bank or its regulators, they fall in an exception to the *D'Oench, Duhme* doctrine recognized by the Ninth Circuit in *FDIC v. Meo,* 505 F.2d 790 (9th Cir.1974). The court in *Meo* allowed a good faith borrower to assert the defense of failure of consideration against the FDIC because he was "a completely innocent party." *Id.* at 792-93. We admit that the two cases relied on by Appellants, *FDIC v. McClanahan,* 795 F.2d 512, 516 (5th Cir.1986), and *Buchanan v. Federal Savings & Loan Insurance Corp.,* 935 F.2d 83, 85-86 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991), acknowledge the holding in *Meo* and a possible "innocent borrower" defense.

The Ninth Circuit's decision, however, is not binding on this Court, and, more importantly, we have recently disapproved of the "innocent borrower" exception to the *D'Oench, Duhme* doctrine:

> We need not consider Payne's innocence. Even if Payne's reliance on *Meo* might have been well placed at one time, it is

6

misplaced today and has been since *Langley* was decided in 1987. In *Langley,* the makers of the note were "wholly innocent" in that they relied on false representations by the bank in executing the note. Yet the Supreme Court held that the makers could not assert their defense. In so doing the *Langley* Court destroyed the "wholly innocent borrower" exception to the *D'Oench, Duhme* doctrine.

*FDIC v. Payne,* 973 F.2d 403, 407 (5th Cir.1992). Similarly, in *Bowen v. FDIC,* 915 F.2d 1013, 1016 (5th Cir.1990), we disavowed any inference in *McClanahan* that malfeasance was necessary in order for the *D'Oench, Duhme* doctrine to apply. *See also Bell & Murphy and Assocs., Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 753-54 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Beighley v. FDIC,* 868 F.2d 776, 784 (5th Cir.1989). Thus, the weight of the authority in this Circuit militates against an "innocent borrower" defense.

In sum, Appellants are barred by the *D'Oench Duhme* doctrine from asserting any of their defenses against the FDIC. Accordingly, the FDIC is entitled to summary judgment as a matter of law.

III. *Ahmed's Claims*

FNB had a statutory right under 6:316 of the Louisiana Revised Statutes[4] and a contractual right[5] to setoff Ahmed's CD

---

[4]Section 6:316(A) provides:

> [C]ompensation takes place by operation of law between funds held on deposit with a bank organized under this Title or with a national bank domiciled in this state and any loan, extension of credit, or other obligation incurred by the depositor in favor of the bank.... The funds to which this compensation applies shall be deemed to be pledged by the depositor in favor of the depository bank.

against the amount owed and due on his loan. Ahmed argues, however, that the bank wrongfully set off the CD because the Louisiana Insurance Commission had a superior right to it. He claims that depositing his CD with the Insurance Commission in 1985 created a pledge under the Louisiana Civil Code. Ahmed contends that because he did not receive the loan to which the CD was set off until later in 1985 and the bank from which he received the loan did not merge with the bank that issued the CD until December 31, 1987, the Insurance Commission's right to the CD primed the bank's right of setoff.

The FDIC correctly points out the critical flaw in Ahmed's argument: the CD was not pledged to the Louisiana Insurance Commission. A pledge is "a contract by which one debtor gives something to his creditor as a security for his debt." La.Civ.Code Ann. art. 3133 (West 1952). For the CD to be pledged, Ahmed must prove a valid underlying principal obligation. *Alley v. Miramon,* 614 F.2d 1372, 1382 (5th Cir.1980). In Ahmed's case, however, no

---

La.Rev.Stat.Ann. § 6:316(A) (West Supp.1993).

[5]The pertinent part of the loan agreement states:

> This note ... shall be secured by ... the balance of every deposit account of the parties hereto or any of them, may at any time have with the Bank.

> Bank is hereby authorized at any time and from time to time at its option to compensate itself by applying any part or all of the balance of every deposit account of the parties hereto or any of them, and/or any or all monies now or hereafter in the hands of the Bank, or in transit to or from the Bank, and belonging to the parties hereto or any of them to the payment, in whole or in part, of this note, in principal, interest, costs and attorney's fees.

8

underlying obligation exists for which the pledge could serve as security.

Ahmed argues that his principal obligation to the Insurance Commission was to produce an unencumbered asset worth $125,000 in order to be considered a self-insured health care provider who qualified to participate in the Patients' Compensation Fund. *See* La.Rev.Stat.Ann. §§ 40:1299.41-.48 (West 1992). Contrary to Ahmed's assertion, however, he did not owe the Commission any obligation to become self-insured. He voluntarily chose to be classified as self-insured and could have changed that classification at any time by filing proof of adequate insurance policy coverage with the Commission. *See id.* § 40:1299.42(E); La.Ins.Regulation, Malpractice Self-Insurance, Rule No. 2 (effective 11/20/75). Alternatively, Ahmed argues that contingent malpractice claims serve as the underlying obligation because the Commission could use the CD to cover claims not paid. Yet, a "[p]ledge is an accessory contract which secures the performance of an underlying *existing* principal obligation." *Texas Bank of Beaumont v. Bozorg,* 457 So.2d 667, 671 n. 4 (La.1984).[6] No malpractice claims were pending when FNB offset the loan, and malpractice claims not yet risen into existence cannot serve as the principal obligation.

Ahmed next argues that even if there were no pledge, the transaction still qualifies as a transfer of an instrument for

---

[6]*But see Wolf v. Wolf,* 12 La.Ann. 529, 532 (1857) (finding no principle of law which prevents a pledge being made to secure an obligation not yet risen into existence).

valuable consideration in accordance with La.Rev.Stat.Ann. § 10:3-302 (West 1993). The CD issued by the bank to Ahmed was stamped with the term "non-transferable". When an instrument on its face notes that it is non-transferable, the instrument is non-negotiable under Louisiana commercial law. *Id.* § 10:3-104(d). The Louisiana Insurance Commission cannot be a holder in due course as Ahmed argues. Thus, the Insurance Commission has no superior rights over the bank's right of setoff under statute and the loan agreement.[7]

Finally, Ahmed argues that if the bank had a right of setoff, it did not satisfy the notice requirements of § 6:316(D) of the Louisiana Revised Statutes when it asserted its setoff claim, and as a result, it did not satisfy a condition precedent to making an offset. Ahmed failed to raise this argument to the district court, and accordingly, we will not consider this claim. *See Topalian v. Ehrman,* 954 F.2d 1125, 1131-32 n. 10 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992) (parties may not advance new theories or raise new issues to secure reversal of summary judgment). The district court did not err in granting summary judgment for the FDIC.

CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment for the FDIC against all Appellants.

AFFIRMED.

---

[7]Ahmed devotes considerable time to briefing the argument that the recipient of a pledge does not have to give notice to subsequent creditors to have priority. Because we find no pledge, we will not address this argument.