The INN AT SARATOGA ASSOCIATES, a New York limited partnership, Myra Rynderman, as administratrix of the estate of Monia S. Rynderman, William F. Chandler, Steven N. Fischer, Roy Fischer, John S. Gijanto, Lawrence A. Kotlow, Richard G. Kotlow and John E. Wolfgang, individually, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver of Bank of New England, N.A., Defendant.

No. 91–CV–145 (LPG).

United States District Court,
N.D. New York.

June 27, 1994.

Phillip G. Steck, Cooper, Erving, Savage, Nolan & Heller, Albany, NY, for plaintiffs.

Christopher Massaroni, DeGraff, Foy, Holt–Harris & Mealey, Albany, NY, for defendant.

## OPINION & ORDER

GAGLIARDI, Senior District Judge.

Plaintiffs commenced this action against Berkshire Bank & Trust Company ("Bank") in August 1986 in New York State Supreme Court, Albany County, raising several contract and tort claims. All of Plaintiffs' claims stem from an alleged contract between Plaintiffs and the Bank for a $1.3 million mortgage loan. In a letter dated June 2, 1994, the FDIC requested judgment in its favor, claiming protection against Plaintiffs' action under section 1823(e) of Title 12, United States Code, 12 U.S.C. § 1823(e) (as amended Aug. 9, 1989) ("§ 1823(e)"); the Court construes this letter as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Fed. R.Civ.P. 56 (1994) ("Rule 56").

In support of its motion, the FDIC relies on the contents of the parties' Joint Stipulation of Facts and its Trial Brief. Plaintiffs filed an opposition memorandum, to which the FDIC in turn filed a response. On June 10, 1994, the Court held a pre-trial conference during which both parties agreed that the case is ripe for summary judgment consideration. The Court set a deadline of June 17, 1994 for any final submissions. On June 17, 1994, Plaintiffs filed the affidavits of Mr. Lawrence F. Anito, Jr. ("Anito") and Plaintiff Richard G. Kotlow. For the reasons stated below, the FDIC's motion for summary judgment as to all of Plaintiffs' claims is granted.

## I. BACKGROUND

The factual basis for Plaintiffs' complaint is as follows, with all the pertinent events occurring in 1985 unless otherwise indicated. On January 15 Plaintiff Monia S. Rynderman ("Rynderman") met with William H. Porter, Jr. ("Porter"), a Vice President and Regional Loan Officer of the Bank, seeking a $617,500 loan to be made to Plaintiff The Inn at Saratoga Associates ("Saratoga Associates"), a limited partnership, for the purchase and renovation of the Coachman Inn. On January 24 the Bank issued a commitment letter ("January 24 Commitment") for the above amount; Plaintiffs did not execute this letter. Per Rynderman's request, on April 9 the Bank issued a second commitment letter ("April 9 Commitment") for the amount of $875,000; this letter was similarly unexecuted by Plaintiffs.

Loan officers from the Bank met with Plaintiffs during April and May to discuss increasing the loan amount to over $1 million. On June 24 Plaintiff Rynderman entered into a contract to purchase the Coachman Inn on behalf of Saratoga Associates. On June 26 the Bank's Officer Loan Committee ("OLC") voted to table the proposed loan to Plaintiffs, memorialized in the Loan Approval Record ("LAR").

On July 3 Plaintiffs Kotlow, Fischer, Chandler, Gijanto and Wolfgang agreed to provide $200,000 in personal guarantees to induce the Bank to expand the proposed loan amount to $1.3 million. On that same day, the OLC approved the $1.3 million loan subject to certain conditions, memorialized in the Officer Loan Committee Minutes ("OLCM"). On July 15 Porter wrote a letter to Plaintiff Kotlow ("Porter letter") concerning the $1.3 million loan, which states in relevant part:

Our Loan Committee, subsequent to a formal review of the 3/31/85 financial statements on the Lookout Inn [ (another inn owned by Plaintiffs) ], have ratified the $1.3 million loan. I assumed [sic] that the financial statements on the Lookout Inn will give us the comfort that we seek in those statements and I look forward to ironing out all the final details relative to this mortgage loan at the earliest possible convenience.

With regard to the $1.3 million loan, the Bank did not issue a formal commitment letter similar to the January 24 and April 9 Commitments.

On August 21 Anito forwarded proposed closing documents to the Bank on behalf of Plaintiffs, referring to the total loan amount as $1.3 million. On August 26 the Bank's attorneys reviewed an internally-produced draft commitment letter for the $1.3 million loan; this draft was never finalized and thus no commitment letter was ever sent to Plaintiffs.

On August 30 Saratoga Associates received a $375,000 loan from the Bank for its purchase of Coachman Inn ("Coachman Inn loan"). None of the documents relating to this transaction referred to the $1.3 million proposed loan. Plaintiffs took possession no later than September and satisfied this debt obligation on December 23.

On September 10 officials from the Bank met with Plaintiffs to inform them that they had yet to provide the necessary documents for the $1.3 million loan. On September 26 the OLC again approved the $1.3 million loan subject to certain conditions. Between September and October, the Bank tried to find a participating lender, a condition that needed to be satisfied before the Bank proceeded with the loan. On October 3 the Bank rejected Plaintiff Kotlow's request for funds to pay construction expenses because a participating lender was yet to be found. On October 10 Rynderman demanded funds for con-

struction expenses, which was again rejected. On October 23 Berkshire County Savings Bank agreed to participate in the loan but subject to its own distinct conditions. Finally, officials from the Bank agreed to proceed with financing the construction on November 6, but only upon different terms—as a short-term construction loan with Plaintiffs to seek permanent financing elsewhere.

Separately, on October 23, Plaintiffs managed to procure a loan for $1.3 million from Norstar Bank of Upstate New York ("Norstar"); this loan closed on December 16. On December 23 Plaintiffs managed to have the loan amount increased to $1.55 million through Fleet Bank, Norstar's merger partner.

On August 1, 1986, Plaintiffs commenced this litigation. Bank of New England ("BNE") subsequently acquired the Bank. On January 6, 1991, Defendant Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of BNE, which ceased to exist as a legal entity. After exhausting their administrative remedies, Plaintiffs resumed this action against the FDIC on September 17, 1991.

## II. STANDARD FOR RULE 56 RELIEF

Rule 56 states in relevant part:

**(b) For Defending Party.** A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

**(c) Motion and Proceedings Thereon....** The judgment sought shall be rendered forthwith if ... there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law....

Fed.R.Civ.P. 56(b) & (c). Where there is no dispute as to the operative facts, if the movant demonstrates that it is entitled to judgment as a matter of law, the court should grant the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Here, the parties filed a Joint Stipulation of Facts, which contains a full recita-

tion of the facts necessary to determine the legal question involved—whether the FDIC is entitled to judgment as a matter of law pursuant to § 1823(e). If the FDIC meets its burden of demonstrating such entitlement, then the Court may grant the motion for summary judgment. *See Id.*

## III. APPLICABILITY OF SECTION 1823(e)

The FDIC argues in its motion for summary judgment that it is entitled to the protection accorded it by § 1823(e). Plaintiffs disagree, contending that § 1823(e) does not apply to their contract claims because there is no agreement in an asset as required by that provision.

Section 1823(e) is applicable to Plaintiffs' contract claims. That provision states in relevant part:

No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it ... as receiver of any insured depository institution shall be valid against the [FDIC]....

12 U.S.C. § 1823(e). The parties agree that the applicability of § 1823(e) is governed by whether there was an "agreement ... in an[ ] asset" involved in this case.

The alleged promise to make a future loan involved in this case constitutes an agreement in an asset. An "agreement" as used in § 1823(e) should be interpreted broadly, *Langley v. FDIC,* 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987), and includes "promises to perform acts in the future," *id.* at 92, 108 S.Ct. at 401. An "asset" includes both bank loans and "promises to make future loans." *In re NBW Commercial Paper Litig.,* 826 F.Supp. 1448, 1464 (D.D.C.1992). Thus, § 1823(e) reaches "unrecorded agreements to extend future loans," *Bell & Murphy & Assoc. v. Interfirst Bank Gateway,* 894 F.2d 750, 753 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990), even if the FDIC cannot be said to have acquired a specific asset such as a documented, executed loan contract, *Jackson v. FDIC,* 981 F.2d 730, 734 (5th Cir.1992). That is, where the loan was never actually agreed upon, the loan negotiations suffice to

bring the transaction within § 1823(e). *Id.* at 734–35.

Section 1823(e) does not protect the FDIC, however, where the "no asset" exception applies—that is, where the party adverse to the FDIC claims that the purported asset is invalid because of fraud in the factum and such fraud arises from acts independent of any understanding or side agreement between the parties. *FDIC v. Zook Bros. Constr. Co.*, 973 F.2d 1448, 1452 (9th Cir. 1992); *FDIC v. Merchants Nat'l Bank*, 725 F.2d 634, 639 (11th Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984). Where the fraud alleged is only fraud in the inducement, such an allegation does not remove the § 1823(e) protection accorded the FDIC. *Langley*, 484 U.S. at 93, 108 S.Ct. at 402.

Here, Plaintiffs in their opposition memorandum argue that § 1823(e) is not applicable because the pertinent "asset," the Coachman Inn loan, was satisfied on December 23, 1985. Plaintiffs continue that because the obligation was satisfied, it was not an asset that the FDIC acquired when it became the receiver of the Bank in January 1991.

Plaintiffs' contention lacks merit because it is predicated on a defective factual premise. The "asset" involved here is not the Coachman Inn loan; rather, the relevant "asset" for § 1823(e) purposes is the Bank's conditional promise of a future loan in the amount of $1.3 million. Furthermore, Plaintiffs' allegations that the Bank acted fraudulently are all based on a fraud in the inducement theory and as such do not fall within the "no asset" exception. The Bank's conditional promise fits within the definition of an "agreement . . . in an[ ] asset" and thus § 1823(e) applies to this case.

## IV. INVALIDITY OF CONTRACT CLAIMS UNDER SECTION 1823(e)

██ The FDIC argues that the transactions involved here were at most loan negotiations and as such do not meet the strict requirements of § 1823(e)(1), (2) and (4). Plaintiffs maintain that even if § 1823(e) is applicable, their claims are valid under the less strict *D'Oench* doctrine, *see D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct.

676, 86 L.Ed. 956 (1942), because their agreement with the Bank was in writing.

The agreement involved in this case does not meet the requirements of either § 1823(e) or the *D'Oench* doctrine. Section 1823(e) states in relevant part:

[No agreement which tends to diminish or defeat the interest of the FDIC in an asset acquired by it as receiver is valid against the FDIC] unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e). Courts have strictly construed and adhered to the conditions set forth in § 1823(e)(1)–(4), *Langley*, 484 U.S. at 95, 108 S.Ct. at 403, requiring that all four conditions be satisfied before finding a valid claim, *id.* at 93, 108 S.Ct. at 402. The *D'Oench* doctrine essentially states a borrower in an action against the FDIC is equitably estopped from relying on any unwritten "scheme or arrangement" that tends to or is likely to deceive creditors or banking authorities. *See D'Oench*, 315 U.S. at 460, 62 S.Ct. at 680–81. The requirements of § 1823(e) are substantially coextensive with those of the common law *D'Oench* doctrine, *see id.* at 92, 108 S.Ct. at 401–02, the former being a codification of the latter, *Grande v. Bank of New England*, No. 93–2049, 1994 WL 233703, at *1–3, 1994 U.S.App. LEXIS 12653, at *4–5 (1st Cir. June 1, 1994); *Kilpatrick v. Riddle*, 907 F.2d 1523, 1526 (5th Cir.1990), *cert. denied*, 498 U.S. 1083, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991).

Here, the FDIC does not specifically contend that § 1823(e)(3) is unsatisfied, given that the 1.3 million loan was approved by the OLC on July 3 and again on September 26,

and this approval was reflected in the OLCM. Thus, the only issues raised for the Court's consideration are: whether the agreement was in writing; whether it was properly executed; and whether it had been properly recorded.

### A. Section 1823(e)(1)'s Writing Requirement

 The agreement involved here does not meet the "in writing" requirement of § 1823(e)(1). For an agreement in an asset to be valid against the FDIC, it must be in writing. 12 U.S.C. § 1823(e)(1). A party raising a claim against the FDIC may generally not rely on piecemeal, supporting documentation to a proposed loan or a series of documents to meet the writing requirement, either under § 1823(e)(1), *Beighley v. FDIC,* 868 F.2d 776, 782–83 (5th Cir.1989), or the *D'Oench* doctrine, *Sweeney v. RTC,* 16 F.3d 1, 5 (1st Cir.1994) ("[A]n intention to provide further funds ... [is] insufficient to establish an obligation on the part of [a bank] which would meet the requirements of *D'Oench.*"); *FSLIC v. Gemini Management,* 921 F.2d 241, 245 (9th Cir.1990) ("[The bank's intent to loan funds] falls short of establishing that [it] was *obligated* to fund [the loan]. We believe *D'Oench* and its progeny require a clear and explicit written obligation."). Documents purporting to support a loan contract do not meet the writing requirement where a bank examiner could not have ascertained the exact nature of the asset by looking at the "four corners" of these documents. *Jackson,* 981 F.2d at 735. Bank examiners are unlikely to be able to successfully make such a determination where the documents, even when viewed together, do not facially indicate the existence of a valid contract. *Id.* Furthermore, a court should not draw inferences or implications to create a written agreement against the FDIC, *e.g., Zook Bros. Constr.,* 973 F.2d at 1451–52; *FDIC v. Hamilton,* 939 F.2d 1225, 1231 (5th Cir.1991), and a borrower's good faith reliance on the unwritten agreement is irrelevant, *Sweeney,* 16 F.3d at 5.

 Where there is no written agreement or agreements clearly evidencing an alleged loan contract, borrowers may not raise claims stemming from the underlying, alleged promise to make a future loan; such claims are barred by both § 1823(e)(1), *Dahlstrom v. FDIC,* No. 91–4006, 1992 WL 107354, at *1–2, 1992 U.S.App. LEXIS 11528, at *3–4 (10th Cir. May 15, 1992); *Gemini Management,* 921 F.2d at 245 (same); *FSLIC v. Two Rivers Assocs.,* 880 F.2d 1267, 1275–76 (11th Cir.1989) (same); *FDIC v. Dixon,* 791 F.2d 932 (6th Cir.) (same) (unpublished opinion), *cert. denied,* 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986), and the *D'Oench* doctrine, *Timberland Design, Inc. v. First Serv. Bank for Sav.,* 932 F.2d 46, 50 (1st Cir.1991); *Bell & Murphy,* 894 F.2d at 753 (same). More specifically, board committee minutes discussing a bank's potential loan do not meet the writing requirement. *RTC v. Carr,* 13 F.3d 425, 431 (1st Cir.1993) ("the minutes of a bank's executive committee, which merely record the authorization of the Board to the bank's officers to extend a loan on certain conditions, do not constitute a contract between a bank and the borrower" under § 1823(e)).

Here, the FDIC argues that the only documents that plaintiffs can refer to as arguably constituting a written agreement are the Porter letter and some internal documents of the Bank (e.g., the OLCM). The FDIC continues that these documents do not suffice to meet the writing requirement for they only reflect interim steps in the negotiation of the $1.3 million loan. These negotiations were never finalized and thus there was no formation of a loan contract. Plaintiffs contend that the series of letters and other documents relating to the loan along with the Porter letter are sufficient to meet the writing requirement. They continue that they purchased the Coachman Inn for renovation in reliance on the Bank's initial promise and later commitment to lend 1.3 million.

Plaintiffs' contention is unpersuasive because these letters and other documents are indicative of exactly the opposite proposition than that which Plaintiffs advance. That is, rather than prove that there was a final loan contract, they attest to the incompleteness of the parties' loan negotiations. The Porter letter, even if construed as a commitment letter, does not constitute a contract. *See*

*Murphy v. Empire of Am.,* 746 F.2d 931, 934 (2d Cir.1984) (under New York law, a lender's commitment letter constitutes a contract only when signed by both parties and when the commitment letter evidences that both parties "concur[red] as to the essential terms of the future mortgage transaction"). Similarly, the OLCM does not compose a contract. *See Carr,* 13 F.3d at 428 ("[the borrower] reaches for straws when he attempts to carve out a contract from the corporation minutes"). Essentially, these documents represent contingent offers and counteroffers—each containing different terms—none of which were accepted; thus, no contract was ever formed. Regardless of Plaintiffs' reliance on the Bank's alleged obligation to lend the $1.3 million, whether viewed separately or aggregately, these documents do not satisfy the writing requirement under either § 1823(e)(1) or the *D'Oench* doctrine.

**B. Section 1823(e)(2)'s Execution Requirement**

▆▆▆ Even if the writing requirement was met, there is no indication that the written agreement was duly executed along with a contemporaneous acquisition of the asset by the Bank, as required by § 1823(e)(2). Where a borrower has not signed the relevant document that purportedly constitutes a written agreement under § 1823(e), the agreement is not valid for it is not duly "executed." 12 U.S.C. § 1823(e)(2); *Crossland Fed. Sav. Bank v. 114 East Realty Co.,* No. 93 Civ. 2925, 1994 WL 30460, at *5–6, 1994 U.S.Dist. LEXIS 753, at *15 (S.D.N.Y. Jan. 28, 1994) (party opposing FDIC must produce a signed, written agreement between the two parties to satisfy § 1823(e)(2)'s "executed" requirement). This result is the same regardless of whether the subject document is an unsigned commitment letter, *Gemini Management,* 921 F.2d at 245, board minutes, *Carr,* 13 F.3d at 428; *RTC v. Ruggiero,* 977 F.2d 309, 316 (7th Cir.1992), or an internal bank memorandum, *FDIC v. Virginia Crossings Partnership,* 909 F.2d 306, 309 (8th Cir.1990). Furthermore, even if there is a written, executed agreement, there must also be a contemporaneous transfer of an asset—such as a promissory note and any necessary security interests—memorializing

a borrower's obligation to a bank. *Swedbank v. FDIC,* No. 93–1338, 1994 WL 183542, at *4, 1994 U.S.App. LEXIS 10688, at *13–14 (1st Cir. May 13, 1994).

Here, both parties agree that the Porter letter is arguably the closest document resembling a written agreement; the LAR and the OLCM qualify as secondary candidates. The Porter letter, even if construed as a commitment letter (Plaintiffs concede that this was not a formal commitment letter), was unsigned by Plaintiffs. The LAR and OLCM similarly were unsigned by Plaintiffs. Thus, there was no executed document reflecting the Bank's alleged obligation to lend. Furthermore, because there was no executed promissory note or security interests evidencing Plaintiffs' obligation to the Bank, there was no contemporaneous transfer of an asset. Under these facts, Plaintiffs have failed to meet § 1823(e)(2)'s "executed" requirement.

**C. Section 1823(e)(4)'s Recording Requirement**

Finally, without a written, executed agreement, Plaintiffs cannot meet the requirements imposed by § 1823(e)(4). Section 1823(e)(4) states that a claim against the FDIC is not valid unless the subject "agreement ... has been, continuously, from the time of its execution, an official record of [the acquired bank.]" 12 U.S.C. § 1823(e)(4). Though the Porter letter, the LAR or the OLCM may be construed as general records of the Bank, subsection (e)(4) requires an executed, written agreement that qualifies under subsections (e)(1) and (2) to be continuously kept as an official record of the Bank. *See Id.* No such agreement exists here. Thus, Plaintiffs have failed to meet § 1823(e)(4)'s recording requirement.

**V. INVALIDITY OF TORT CLAIMS UNDER SECTION 1823(e)**

▆▆▆ Plaintiffs allege several tort claims based on the following theories: negligent misrepresentation, fraud and breach of an implied covenant of good faith and fair dealing. Each of these claims stems from the events surrounding the underlying loan

transactions and negotiations. The FDIC argues that all of Plaintiffs' tort claims are invalid against it pursuant to § 1823(e). Plaintiffs argue that even if § 1823(e) is applicable, that provision does not invalidate their tort claims.

Plaintiffs' tort claims, because they are all based on the underlying loan transactions, are barred by § 1823(e). Tort claims derived solely from an agreement relating to an asset that fails to meet the conditions of § 1823(e) are invalid against the FDIC. *See, e.g., Langley,* 484 U.S. at 93, 108 S.Ct. at 402 (fraud); *FDIC v. Bernstein,* 944 F.2d 101, 108 (2d Cir.1991) (fraudulent inducement); *Timberland Design,* 932 F.2d at 50 (negligent misrepresentation); *Washington Properties Ltd. Partnership v. RTC,* 796 F.Supp. 542, 546 (D.D.C.1992) (breach of implied covenant of good faith and fair dealing). That is, § 1823(e) "bars affirmative claims, whether sounding in contract or tort, when they are premised on an unwritten agreement." *Sweeney,* 16 F.3d at 4. The *D'Oench* doctrine, however, does not bar tort claims that arise solely from facts independent of those surrounding the asset acquired by the FDIC. *Vernon v. FDIC,* 981 F.2d 1230, 1233–34 (11th Cir.1993) (securities fraud); *Astrup v. Midwest Fed. Sav. Bank,* 886 F.2d 1057, 1059 (8th Cir.1989) (breach of fiduciary duty).

Here, Plaintiffs essentially argue that tort claims against the FDIC are not absolutely barred by § 1823(e). Though that proposition is generally accurate, *see, e.g., Vernon,* 981 F.2d at 1233–34, appurtenant tort claims stemming from an invalid, unwritten agreement and against the FDIC—such as those alleged by Plaintiffs—are barred under both § 1823(e) and the *D'Oench* doctrine, *see, e.g., Langley,* 484 U.S. at 93, 108 S.Ct. at 402.

## VI. CONCLUSION

Plaintiffs have failed to meet the strict requirements of § 1823(e) and the *D'Oench* doctrine as required for them to be able to maintain their contract claims against the FDIC. Thus, Plaintiffs' contract claims are invalid against the FDIC. Plaintiffs' tort claims are all based on the same set of operative facts—those enveloping the loan negotiations. Thus, these re-characterized claims are similarly invalid against the FDIC. There being no genuine issues of material fact and the FDIC being entitled to judgment as a matter of law, the FDIC's Rule 56 motion for summary judgment as to Plaintiffs' contract and tort claims is granted. Let the clerk enter judgment accordingly.

So Ordered.